UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMRONA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:20-CR-00762-SEP |
| | ) |
| RONALD SAUNDERS, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S SENTENCING MEMORANDUM**

Ronald Saunders, through counsel, submits this Sentencing Memorandum for the Court's consideration in support of a sentence of two years, to be followed by a period of supervised release. This sentence reflects the nature and circumstances of Ron's offense, his history and characteristics, the need for punishment and deterrence, and is sufficient but not greater than necessary to serve the purposes of sentencing set forth in 18 U.S.C. §3553(a).

**Two lives derailed by an unhealthy relationship.**

At nearly 38, Ronald Saunders ("Ron") thought he would be enjoying the fruits of his successful real estate business and community service alongside his wife, Kim. Instead, he found himself in an unhealthy relationship with a seventeen-year-old that has caused immeasurable pain to both of them and their families. Ron has always sought to be a helper to his family and his community. He has been a community volunteer in both formal and informal ways throughout his adulthood. Stories from friends of his acts of selfless support for his neighbors—even those he did not know—are legion. Ron can always be counted on to stop for a stranded motorist or a family member in distress or a client who needs a little extra help. In June of 2020, even as the destructive relationship at the heart of this case was playing out, Ron gave of his time without regard for his

own safety by heading into local snake-infested woods with his bloodhound, Lucy, to help police locate a woman and child who had been missing overnight. Exhibit A – ABC News Article.

But Ron's instincts went terribly awry after he began to communicate with A.W. and her friend A.M. via an internet chat room. At first, they talked about their respective lives in the way a mentor and student might, with him giving her and her friend A.M. advice about their lives and encouraging them to stay on the straight and narrow. After several months, it was clear they shared a romantic interest in one another, and he insisted she confirm her age. She assured him she was seventeen, and showed him her driver's license as proof. He researched the age of consent in both South Carolina and Missouri to satisfy himself they would not be breaking any rules by forging ahead with the sexual component of the relationship. But neither of them realized that the electronic nature of their relationship—forged through telephone calls, text messages, pictures, and videos shared as they spent hours communicating with one another over the course of several months—was a violation of federal law. As ill-advised as a relationship between a 36-year-old and a seventeen-year-old might seem now, and as prurient as some of their communications sound now, at no time did Ron intend the harm to A.W. that has undeniably occurred as a result of their relationship. He has agreed with the Government to be responsible for restitution, which he is prepared to pay immediately, to provide for her ongoing therapeutic needs.

Despite her pain and frustration, Ron's wife Kim remains his biggest supporter. She is clear-eyed about the criminal case but knows and loves the heart of the man she married. The impact of this prosecution weighs especially on Kim—as a legal permanent resident of the U.S. and citizen of Canada, her entire family remains at home in Canada, and she and Ron have traveled to spend time with them every year. The realization that Ron will likely never be able to return to Canada with her as her parents have reached their later years is a source of deep sadness.

Uncovering "how did we get here," has been Ron's project since his arrest in late 2020. Even before he was arrested, he was aware that there was a criminal investigation. He immediately sought counsel and his undersigned counsel in South Carolina reached out to authorities in Arnold to offer his cooperation, but those offers went unanswered. Only months later did he learn of the FBI's involvement in his case when Dorchester County Sheriff's Deputies arrived at his home on a Friday night to serve him with the warrant in this case. Since his release, he has engaged in weekly therapy with Kevin Downs, a licensed professional counselor (who was previously a lawyer and law enforcement officer); his attendance at those sessions was the only activity outside of work Ron was regularly permitted to do while on electronic monitoring. Their work has been focused on identifying and correcting the kinds of thinking errors that led Ron to this moment and has been a lifeline to him during the stress occasioned by this prosecution. Ron remains committed to continuing that therapeutic work with Mr. Downs upon his release from custody.

Ron is fortunate to have family and countless friends who, despite this situation, remain steadfast in their support of him. Exhibit B – Letters of Support. As someone who has always prided himself on taking care of his family, having put himself in a situation where he is now incarcerated and unable to do so has been deeply humbling. As a result of this case, Ron will likely be unable to continue in the profession he has pursued for the last 17 years, but he is committed to finding a new way to work and support those who have stepped up for him in his time of need.

Ron's health remains a concern. For a man so young, he has experienced numerous medical challenges, including kidney cancer and non-alcoholic steatohepatitis, and high blood pressure. His doctors also monitor a non-malignant meningioma in his brain. He also has an extremely limiting set of food allergies, a problem of special concern in a custodial setting in which specialized diets are often ignored.

Ron is presently in custody because he admitted to violating bond in May of this year, after he foolishly sent a message—albeit a relatively innocuous one—to A.W.'s friend A.M. Indeed, in response to A.M.'s father, his message expressed his remorse for the conduct at issue in this case. He turned himself in right away on the violation and did not contest detention. He has remained at the Charleston County Detention Center ever since. Prior to the bond violation, the Government had agreed to recommend a term of imprisonment for Mr. Saunders of two years, though he was free to argue for a non-custodial sentence. In light of the bond violation, the Government offered Ron a revised plea agreement in which they will recommend a period of custody of five years, a sentence well below the range called for under the Guidelines. If not for the bond violation, Ron would be asking this court for a non-custodial sentence. But even with that brief lapse in judgment considered, a sentence in excess of two years would not serve the purposes set forth in Section 3553(a). A sentence of two years, followed by a term of supervised release would adequately punish him for his misconduct, protect the public, deter further criminal activity, and promote the goals of treatment and rehabilitation in the most effective means necessary.

**Legal Framework for Child Pornography Offenses**

Most child pornography cases involve caches of images from users with a pattern of addictive or obsessive preoccupation with children. Moreover, most child pornography cases involve the serial exploitation of a child's imagery over years of distribution and redistribution. This case is different, in that it involves a single, identifiable victim and the sharing of imagery only between the victim and the defendant. Without minimizing the very real harms the victim in this case has suffered, the images she exchanged with Ron were never shared or redistributed and will not follow her throughout the Internet for the rest of her life. Everyone involved in this case hopes

for a healthy, happy future for A.W., despite the serious difficulties she has faced over the last two years.[1]

The current legal framework by which child pornography sentences are viewed is flawed and fails to account for critical differences between offenders. Over the years there has been a shift away from strict application of the child pornography sentencing guidelines in a rote fashion. Instead, many courts now focus on examining each offender on a case-by-case basis with emphasis on the 18 U.S.C. § 3553(a) factors.[2] S*ee generally* Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (hereinafter, Stabenow, *Deconstructing the Myth*) (July 3, 2008) (available at https://www.ussc.gov/sites/default/files/pdf/training/annual-national-training-seminar/2016/report_stabenow.pdf) (detailing the various congressionally mandated revisions to the child pornography Sentencing Guidelines and their effect on "ordinary" defendants) (last visited May 18, 2022).

---

[1] In 2021, after being repeatedly contacted by A.W. late one night, and despite the risk he knew he would face by disclosing the contact, he called emergency authorities in Missouri and asked them to perform a welfare check. This may have saved her life, as she was found to have taken a dangerous dose of medication for which she needed medical treatment. He immediately contacted Defense Counsel and his supervising probation officer to alert them to the contact.

[2] *See United States v. Beiermann*, 599 F. Supp. 2d 1087, 1095-96 (N.D. Iowa 2009), *See, e.g., United States v. R.V.*, 157 F. Supp. 3d 206, 243-250 (E.D.N.Y. 2016), *United States v. Munoz*, 2012 U.S. Dist. LEXIS 155050 (D. Minn., October 30, 2012), *United States v. Burns*, 2009 U.S. Dist. LEXIS 100642 (N.D. Ill., Oct. 27, 2009), *United States v. Baird*, 580 F. Supp. 2d 889, 892 (D. Neb. 2008); *United States v. Goldberg,* 2008 U.S. Dist. LEXIS 35723, 2008 WL 4542957, *6 (N.D. Ill. April 30, 2008); *United States v. Shipley,* 560 F. Supp. 2d 739, 744 (S.D. Iowa 2008); *United States v. Hanson,* 561 F. Supp. 2d 1004, 1009-1011 (E.D. Wis. 2008); *United States v. Stern*, 590 F. Supp. 2d 945 (N.D. Ohio 2008); *United States v. Ontiveros,* 2008 U.S. Dist. LEXIS 58774, 2008 WL 2937539, *8 (E.D. Wis. July 24, 2008); *United States v. Grinbergs,* 2008 U.S. Dist. LEXIS 91712, 2008 WL 4191145, *5-*8 (D. Neb. Sept. 8, 2008); *United States v. Stults,* 2008 U.S. Dist. LEXIS 106344, 2008 WL 4277676, *4-*7 (D. Neb. Sept. 12, 2008); *United States v. Noxon,* 2008 U.S. Dist. LEXIS 87477, 2008 WL 4758583, *2 (D. Kan. Oct. 28, 2008); *United States v. Johnson,* 588 F. Supp. 2d 997, 2008 WL 5115047, *5-*6 (S.D. Iowa 2008);

While this Court must still calculate the guideline range, it may not treat that range as mandatory or presumptive. *Gall v. United States*, 552 U.S. 38, 51 (2007); *Nelson v. United States*, 555 U.S. 350, 352 (2009); *United States v. Roberson*, 517 F.3d 990, 993 (8th Cir. 2008). The guideline range is "one factor among several" to be considered in imposing an appropriate sentence under § 3553(a). *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). When fashioning a sentence, the judge should **"consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."** *Pepper v. United States*, 131 S. Ct. 1229, 1239-40 (2011) (emphasis added). The Court's "overarching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough*, 552 U.S. at 101; *Pepper*, 131 S. Ct. at 1242-43.

**Application of the key 18 U.S.C. § 3553(a) Factors**

I.     **The nature and circumstances of the offense**

Although this case nominally involves the production of child pornography, it is in a wholly other class from that involving the forceful assault on prepubescent minors that is so often, tragically, the norm for child pornography cases. But the law and the guidelines hardly treat this case differently from the sadistic, violent abuse of young children that is what society rightly expresses its scorn for. And while Ron's mistaken understanding of the law of consent is not a legal defense, it does mitigate his case, in that the sexual acts that form the basis for the pornography at issue here would have been completely legal in both Missouri and South Carolina.

---

*United States v. Gellatly,* 2009 U.S. Dist. LEXIS 2693, 2009 WL 35166, *5-*7 (D. Neb. Jan. 5, 2009).

Despite these distinguishing aspects of possession, the sentencing guidelines don't always make clear distinctions. The enhancements for material involving material depicting sadistic or masochistic conduct, use of a computer apply in nearly every case sentenced under § 2G2.2. These circumstances thus describe conduct that is "essentially inherent to the crime itself," not aggravating factors describing a more serious offense or higher risk of harm. *United States v. Kelly*, 868 F. Supp.2d 1202, 1208 (D.N.M. 2012).

However, in regard to the 2-level enhancement for the use of a computer to commit this sort of offense, as mentioned in the PSR, the Department of Justice has provided a memorandum to the U.S. Sentencing Commission regarding the application of this enhancement. *See*, Doc. 36, page 23, para. 108. This memorandum indicates that the "use of a computer" enhancement in USSG §2G2.2(b)(6) is no longer useful and should be eliminated altogether because of the typical use of computers in these sorts of offenses and fails to show any distinguishable characteristic between offenders. *Id.*

Production and possession of child pornography are serious offenses with real victims. However, it is undeniable that there is a difference between those who seek out children, molest them, and/or produce child pornography, and someone who entered into what he believed, albeit wrongly, was a legally consensual relationship with a 17-year-old he met online.

II.    **The history and characteristics of the defendant**

A.    *Lack of any criminal history.*

As the PSR states, Ron has no criminal history whatsoever and scored no criminal history points. There is no significant history of illegal drug or alcohol abuse. He has no prior criminal history of sex offenses or offenses such as voyeurism or loitering, offenses which "might be seen as precursors to more serious sexual offenses". *See Beiermann*, 599 F. Supp. 2d at 1110. Ron was

involved as a volunteer with youth-oriented nonprofits in the past and there have never been any complaints of inappropriate behavior against him. There is simply no evidence whatsoever that this case or any other conduct reflects a prurient sexual interest in children. This lack of any criminal history or sexual offenses indicate that Ron will do well on supervision after his release from custody.

B.     *Stable employment history.*

Ron's employment record also reflects favorably on him. Ron has worked for nearly two decades to build a career as a real estate agent and has been named "Charleston's Choice" realtor for several years, including 2021, by the readers of the Charleston Post and Courier. After his arrest on these charges, he found ways to modify his business practices to assuage community safety concerns. *See* Exhibit B at 4. The Court may consider Ron's strong work history as evidence of his stability, and that he will do well on supervised release, once the custodial portion of his sentence is served.

C.     *Strong family and community support.*

Ron enjoys strong family bonds and an extremely supportive network of friends and colleagues who have stuck by him throughout this case. His biggest concern with the outcome of this case is how this will affect them. As a source of economic and practical support for the aging members of his family, including his grandmother who is suffering from Alzheimer's disease, Ron's long-term incarceration will be profoundly to their detriment. Those friends and family who have written to the court on his behalf are also aware of the offense and have been supporting him every step of the way without serving as "enablers" or making excuses for his conduct. This level of support shows a "significantly greater support than usual" for his efforts at rehabilitation and

indicate a positive factor towards rehabilitation while on supervised release. *See Beiermann,* 599 F. Supp. 2d at 1110.

D.      Ron's Mental Health Counseling Progress

Within weeks of his release from custody, Ron set about to find a counselor to work with him to process the trauma of his arrest and then to get to work on addressing the risk-taking behavior that led to this prosecution. Ron remains committed to continuing this therapeutic journey and to ensuring that he has the tools necessary to make sure that this sort of behavior is not repeated.

III.    **The need for the sentence imposed to provide just punishment and afford adequate deterrence and protection of the public**

A.      *Sex offender registration and supervision are punishment.*

From July 8 forward, Ron will wear the scarlet letter of "sex offender." He will be ordered to have his photograph, his home address, and the car he drives be published for anyone on the internet to see. By the terms of the South Carolina sex offender registry, he will be limited as to where he can live and will be required to be fingerprinted and photographed multiple times per year by the local sheriff.

The Sixth Circuit held that the state sex offender registration statute imposed punishment. *Doe v. Snyder*, 834 F.3d 696, 705 (6th Cir. 2016). "In sum, while SORA is not identical to any traditional punishments, it meets the general definition of punishment, has much in common with banishment and public shaming, employs geographical restrictions like those employed by punitive sun-down laws, and has a number of similarities to parole/probation." *Id*. at 703. This will be true for Ron.

The consequences of a plea of guilty to a child pornography charge also serves as a deterrent. Courts have found with respect to child pornography offenses, for those that have no criminal history, the goals of general and specific deterrence can be demonstrated by looking at the "shame a defendant felt as mitigating the necessary term of imprisonment." *United States v. Shipley,* 560 F. Supp. 2d 739, 745 (S.D. Iowa 2008); *United States v. Jacob*, 631 F. Supp. 2d 1099, 1118 (N.D. Iowa 2009). With his plea and conviction for possession of child pornography, Ron will continue to be punished and labeled for the rest of his life. Moreover, because his case does not reflect the common occurrence of addiction to child pornography but, rather, an isolated course of conduct involving a single 17-year-old victim, the patterns of behavior often seen among child pornography offenders that might give rise to long-term recidivism concerns are not present.

From July 8 forward, he will be a felon, stripped of his right to traipse through the woods with a rifle during hunting season, as he has done throughout his life. And for as long as he remains on supervision, he will be stripped of the ability to vote in the elections that will continue to shape the policies applicable to people like him.[3] As time goes on the *ex post facto* punishments for being a registered sex offender seem only to worsen.

The complete ostracization of sex offenders is commonplace in the United States. Registry laws seek to permanently banish people like Ron, effectively telling them no amount of rehabilitation, no amount of remorse will ever be enough. When it comes to sex offenders, changes in policy and law are almost always applied retroactively and nearly always constitute a more severe restriction or obligation. An individual with a finding of guilt to a sex offense today has no way of knowing if some future change in the law will further restrict their ability to live a

"normal" life. In many ways, sex offender registration is a lifelong punishment that is much more severe than any prison sentence. Ron will experience this harsh reality no matter what the Court determines for a sentence.

B.      *Conditions of supervision strike a good balance of protecting the public and assisting the individual with rehabilitation.*

The conditions of supervised release that are placed on child pornographers are extensive. There are more conditions placed on these individuals than those placed on drug or weapons offenders. Conditions such as: polygraphs, limited or monitored computer access, no contact with minors, and weekly treatment (individual and group) are all suggested in the PSR. The conditions are difficult and are targeted to address specific concerns of child pornography offenders.

The Probation Office in the District of South Carolina is more than up to the task of supervising these individuals and reporting any concerns to the Court. This mitigates the need for lengthy incarceration when these reasonable community-based options are available. Ten years of supervision will ensure Ron is monitored for a sufficient period of time and that he can complete all of the necessary treatment he has already been progressing towards over the last year-and-a-half.

**IV.     The need to avoid unwarranted disparities**

Defense Counsel have, combined, represented scores of defendants with child pornography-related offenses. This case is unique among those cases, which makes the job of identifying what might constitute an unwarranted disparity a challenge. Perhaps the closest analog are those cases in which defendants engage with law enforcement posing as underaged teenagers. South Carolina

---

[3] South Carolina state law permits people with felony criminal records to vote only once any

counsel recently represented a defendant in *State v. Root* (2022-GS-10-04523, Charleston County, South Carolina, June 9, 2022). In that case, the defendant engaged in lengthy text exchanges in which he shared illicit photographs and requested sexually explicit photographs from an undercover officer who sought to arrange for a meeting between the two; after being charged with counts related to sexual exploitation and attempted sexual assault, the State Attorney General's Office declined to indict the defendant on those charges and, instead, the defendant pleaded guilty to communicating obscene material without consent and was sentenced to time served (8 days) and was *not* required to register as a sex offender.

In various districts, Missouri Counsel has had defendants receive time served and supervised release on child pornography offenses. Those cases include: *United States v. Silies*, case number 4:16CR00099JAR, in which the defendant received one-day time served with lifetime supervised release; *United States v. Dunwiddie*, case number 4:13CR115CDP, in which the defendant received one-day time served with lifetime supervised release; *United States v. Okada*, case number, 4:14CR00361CDP, in which the defendant received one-day time served with lifetime supervised release; and in *United States v. Gant Bloom*, 4:17CR00266AGF, in which the defendant received one day time served and twenty years supervised release in a child pornography case. The afore-mentioned defendants had no significant criminal history, strong family support, stable employment, and posed no danger to children. In these cases, the Court found that the mitigating factors warranted a community-based sentence.

In the Southern District of Illinois, Missouri Counsel has had two cases of a similar nature receive probation. Those cases include *United States v. McNair*, case number 3:15CR30111SMY, where the defendant received five years' probation with forty hours of community service; and

---

term of supervision is complete. S.C. Code Ann. § 7-5-120(B)(3).

*United States v. Faulkner*, case number 3:15CR30121SMY, where the defendant received five years' probation.

The two-year sentence requested here, followed by a fixed term of supervised release, is more severe than the cases recited above. And but for the recent bond violation, Defense Counsel would be seeking a noncustodial sentence. What follows is a non-exhaustive list of cases involving defendants and cases with similar specific characteristics:

a. **Defendant was a first-time offender**:
   i. *United States v. Polito*, 215 App'x 354, 356-57 (5th Cir. 2007) (defendant who had never before been arrested for any offense; presented no threat to the community or young children; receiving mental health treatment, maintained employment, and avoided any problem with the law, and a term of imprisonment would interrupt mental health treatment – defendant had hundreds of images and movie files);
   ii. *United States v. Rhoads*, No. 12-CR-40078 (D. Kan. Jan. 30, 2013) (sentenced to 5 years' probation (guideline range of 97-120 months) where defendant was a victim of childhood abuse, and was successfully undergoing outpatient sex offender treatment);
   iii. *United States v. Ramos*, No. 08-CR-30034 (D. Mass. Jan. 13, 2010) (sentenced to 4 years' probation, 12 months of which in a halfway house, where defendant had no criminal history and had suffered from major depression over many years);
   iv. *United States v. Butler*, No. 1:07-CR-00466 (M.D. Pa. 2008) (defendant was in his sixties with no prior criminal conduct);
   v. *United States v. Helbig*, No. 08-CR-30052 (D. Mass. Sept. 23, 2009) (sentenced to five years' probation, six months of which in a halfway house and six months home confinement, based on defendant's immaturity and lack of judgment, deep contrition and understanding of the seriousness of the offense, lack of risk of harm to children, and particularly strong family support); and
   vi. *United States v. Huffman*, No. 09-CR-20073 (D. Kan. 2010) (defendant was young and attending treatment).

b. **Support of Family and Family Obligations**:
   i. *United States v. Smith*, 09-CR-0740 (E.D. Mo. 2010) (defendant had strong family and community support);
   ii. *United States v. Driskell*, No. 08-CR-641 (E.D. Mo. 2009) (defendant had illegal images available for distribution through file sharing program, but took steps to delete illegal images, and had significant family obligations); and
   iii. *United States v. Jones*, No. 04-CR-1840 (D.N.M. 2004) (defendant had Asperger's syndrome and family obligations).

c. **Defendant had a low risk of recidivism:**

      i. *United States v. Campbell*, No. 09-CR-3023 (D. Neb. Sept. 16, 2010) (sentenced to 5 years' probation with 120 days in halfway house followed by six months of home confinement on electronic monitoring, 100 hours of community service, plus a $7,500 fine, where images were not as serious as most, defendant had successfully passed a polygraph, and forensic evaluations indicated that he presented little risk of recidivism);

      ii. *United States v. Teves*, 11-CR-10351 (D. Mass. 2008) (sentenced to five years' probation, the first six months on home confinement with electronic monitoring where defendant's treating physicians reported that he presents no danger, and that incarceration would interrupt successful treatment);

      iii. *United States v. Saenz*, No. M-05-CR-877 (S.D. Texas 2011) (defendant had been abused as a child, served 5 years of home confinement, and never acted out; he possessed 126 images, including those of boys being raped);

      iv. *United States v. Syzmanski*, No. 08-CR-417 (N.D. Ohio June 1, 2011) (sentenced to one day in prison followed by 5 years of supervised release where 54-year-old defendant had strong work record and community support, health problems, and therapist indicated that he presented no risk to children); and

      v. *United States v. Moreira*, No. 10-CR-002 (D.D.C. May 21, 2010) (sentenced to 5 years' probation with victim restitution ordered totaling $11,600 where clinical evaluations indicated defendant did not present a risk of harm and defendant had family support and strong work history).

**d. Positive Work History**:

      i. *United States v. Smith*, No. 08-CR-31 LRR (N.D. Iowa 2009) (defendant had a strong work history);

      ii. *United States v. Rowan*, 530 F.3d 379 (5th Cir. 2008) (defendant lost career because of case, was progressing in treatment. Defendant received probation with guideline range of 46-57 months);

      iii. *United States v. Hall,* No. 12-CR-20119 (W.D. Tenn. Jan. 16, 2013) (sentenced to time served (one day) followed by 10 years of supervised release, with 5 years home confinement, where defendant had been sexually abused as a child, suffered from serious medical problems and depression and had a long work history); and

      iv. *United States v. Lang*, No. 09-CR-036 (M.D. Tenn. Nov. 21, 2012) (sentenced to time served (6 days) followed by 7 years of supervised release with condition that he teach in prison for 40 hours a week for 3 years, plus a $10,000 fine where defendant had been a professor of sociology for 35 years, had strong family and community support, had only a minimal amount of child pornography, and immediately sought therapy).

**e. Defendant had no pedophilic interest or took ownership for the crime:**

      i. *United States v. Proulx*, 11-CR-10274 (D. Mass. Feb. 16, 2012) (sentenced to 5 years' probation, the first six months of home detention with electronic monitoring, where defendant had no pedophilic interest in children, a strong work history, and strong family support); and

      ii. *United States v. Grosinsky*, 2008 WL 5062845 (E.D. Mich. Nov. 25, 2008) (sentenced to one day in prison followed by 5 years of supervised release, and 100

    hours of community service where probation recommended a variance, where the images were of the defendant and a mature-looking male only 3 months shy of 18 who solicited the defendant, the defendant was in treatment and "displays an understanding of his errant ways, and is unlikely to repeat his wrongful conduct").

  f. **No clearly defined reason for no jail sentence counsel could find**:
      i. *United States v. Arzberger*, No. 08-CR-894 (S.D.N.Y. Apr. 16 2010) (sentenced to 5 years' probation where guideline range was 41-51 months);
      ii. *United States v. Carpenter*, No. 08-CR-06256 (W.D.N.Y. 2009) (defendant possessed several videocassettes containing at least 150 illegal images);
      iii. *United States v. Graci*, No. 2:09-CR-00131-LS-1 (E.D. Pa. 2009) (defendant a former elementary school teacher, purchased access to child pornography websites on three different occasions);
      iv. *United States v. Connelly*, No. 07-CR-830 (D.N.J. Dec. 22, 2008) (sentenced to 5 years' probation and a $1,000 fine where guideline range was 78-97 months); and
      v. *United States v. Boyden*, No. 2:06-CR-20243-LFZ (E.D. Mich. 2007) (defendant purchased access to three child pornography websites over a number of years and searched for illegal images).

  g. **Affirmed probation sentences:**
      i. *United States v. Duhon,* 541 F. 3d 391 (5th Cir. 2008) (defendant sentenced to sixty months of probation where the defendant had no criminal history, no indication that defendant posed a threat to the public, defendant would benefit from continuing his psychological treatment, incarceration would cause defendant to lose social security benefits, and his codefendant received probation for similar conduct); and
      ii. *United States v. Autery*, 555 F. 3d 864 (9th Cir. 2009) (defendant sentenced to five years of probation where the defendant was not a pedophile and had no allegations of abuse, could not be adequately accommodated in a federal institution, needed outpatient psychiatric monitoring and management, no history of substance abuse, enjoyed supporting his family, had no interpersonal instability, and had no sociopathic or criminalistics attitudes); and
      iii. *United States v. Evren*, No. 10-CR-131 (E.D.N.Y. Feb. 26, 2013) (ECF No. 59) (imposing non-Guidelines sentence of three years-probation for defendant who pleaded guilty to one count of possession of child pornography).

  h. **Affirmed supervised release cases:**
      i. *United States v. Stall,* 581 F.3d 276 (6th Cir. 2009) (affirming non-Guidelines sentence of one day of incarceration followed by ten-year period of supervised release);
      ii. *United States v. Mallatt*, 2013 WL 6196946 (sentence of time served followed by six years' supervision with conditions including treatment is adequate to fulfill sentencing goals);

  iii. *United States v. Meillier*, 650 F.Supp. 2d 887 (D. Minn 2009) (imposing non-Guidelines sentence of one day of confinement followed by supervised release was just sentence); and

  iv. *United States v. Morace*, 594 F.3d 340 (4th Cir. 2010) (noting "that some district courts have begun sentencing defendants convicted of possessing child pornography to one day of incarceration followed by a term of supervised release).

## Conclusion

In *United States v. R.V.,* 157 F. Supp. 3d 207, 240 (E.D.N.Y. 2016) the Honorable Jack Weinsten, Senior United States District Judge, discusses the importance of having information before it to assess each child pornography offenders on a case-by-case basis. In this case, Defense Counsel has given the Court a complete picture of Ron and evidence that he does not present a threat to the community and that no more than a brief period of incarceration is necessary to adequately punish him for his misconduct. Ron respectfully requests that the Court consider the treatment he has already undergone, the need to care for his family, his lack of criminal history, and rehabilitative potential when fashioning a sentence. He has accepted responsibility for his misconduct and there is nothing to suggest that Ron has ever engaged inappropriately with any minor children before or since this offense.

Ron has lost his reputation in his community and tarnished the reputation he has built over the last 18 years of building his real estate business. However, that has not stopped him from continuing to work on becoming a better person, a better husband, and someone that this Court will not regret taking a chance on. Ron will always have this federal felony conviction and sex offender registration hanging over his head, but the requested sentence here will at least give him a meaningful chance at rehabilitation and repentance as he tries to move past this matter. It will not take a lengthy prison sentence to punish, deter, and rehabilitate him any further.

WHEREFORE, for the foregoing reasons the Defendant respectfully requests the Court sentence him twenty-four months incarceration to be followed by a fixed period of supervised release with sex offense related conditions as noted in the Pre-Sentence Report.

        Respectfully submitted,

        FRANK, JUENGEL & RADEFELD,
        ATTORNEYS AT LAW, P.C.

By */s/ Matthew A. Radefeld*
        MATTHEW A. RADEFELD (#52288MO)
        Attorney for Defendant
        7710 Carondelet Ave., Suite 350
        Clayton, Missouri 63105
        (314) 725-7777

        BLAZER LAW FIRM

By */s/ Cameron Blazer*
        CAMERON JANE BLAZER (#77000SC)
        Attorney for Defendant
        1037 Chuck Dawley Blvd. D100
        Mount Pleasant, SC 29464
        (843) 732-4441

**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following.

Jillian Anderson
Asst. United States Attorney
111 South Tenth Street, 20th Floor
St. Louis, Missouri, 63102

*/s/ Cameron Blazer*
CAMERON JANE BLAZER